IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JON ALLEN WALTERS,

            Petitioner,

    v.

JEAN HILL,

            Respondent.

Civil No. 07-769-BR

OPINION AND ORDER

**ALISON M. CLARK**
Assistant Federal Public Defender
101 SW Main Street
Suite 1700
Portland, OR  97204

      Attorney for Petitioner

**JOHN R. KROGER**
Attorney General
**JACQUELINE SADKER**
Assistant Attorney General
Department of Justice
1163 Court Street NE
Salem, OR  97301

      Attorneys for Respondent

1 - OPINION AND ORDER -

**BROWN, Judge.**

Petitioner, an inmate at the Snake River Correctional Institution, brings this habeas corpus action pursuant to 28 U.S.C. § 2254. For the reasons that follow, the Petition for Writ of Habeas Corpus is DENIED.

## SUMMARY OF FACTS

Petitioner, his wife, and his 13-year-old daughter were friends of the Stewart family. Petitioner and Mr. Stewart had known each other since junior high school and were best friends. Mr. Stewart, a single parent, had two daughters; "D.S." was twelve years old, and "S.S." was eleven.

Before January 1, 2001, the Stewart girls often stayed with Petitioner's family, usually for several weekends a month. Petitioner and his wife were described as "surrogate parents for the girls."

On December 31, 2000, the Stewart girls spent the night with Petitioner and his family. That evening, the three girls were playing computer games. D.S. became angry because she felt the other two girls were not giving her a fair share of computer time. D.S. left the computer room and went into the kitchen to get something to eat. Petitioner was in the kitchen cooking dinner. According to D.S., Petitioner approached her and gave her a hug, and then "started to touch [her] breasts." She tried to turn

away, "and [Petitioner] pulled [her] back, and he started touching [her] bottom."

According to Petitioner, he was simply giving D.S. a hug, and he may have accidentally brushed her chest when she turned away. Petitioner's daughter testified she witnessed the hug, and it appeared to her that Petitioner accidentally brushed his hand across D.S.'s chest.

Shortly thereafter, D.S. went into Petitioner's bedroom to tell Petitioner's wife what had happened. After Petitioner's wife discussed the issue with D.S., she called Petitioner into the bedroom. Petitioner apologized to D.S. "if he was out of line," and said that the contact was entirely or completely accidental, and it "wasn't done with any bad intentions."

The next day, when her father picked her up from Petitioner's house, D.S. told him Petitioner had touched her "inappropriately" during the visit. The day after that, D.S.'s teacher sent her to the school counselor because she was concerned about D.S.'s behavior. D.S. disclosed to the counselor that Petitioner had touched her inappropriately. The counselor reported the disclosure to Children's Services, and D.S. was referred to the Child Abuse Response and Evaluation Services ("CARES") for an interview and assessment.

On January 9, 2001, D.S. was interviewed at CARES. D.S. reiterated her report of the New Year's Eve touching incident.

She also described a second incident which occurred while she was in Petitioner's laundry room on another occasion. According to D.S., she was roughhousing with Petitioner and had fallen on the floor of the laundry room when Petitioner "came in and playfully sat on [her] chest." Finally, D.S. also disclosed that she had seen Petitioner touch her sister, S.S., in an inappropriate manner.

As a result, on January 16, 2001, S.S. was evaluated by CARES. During her interview, S.S. stated that Petitioner had placed his fingers in her vagina on many occasions. S.S. specifically described two incidents, both of which occurred during overnight stays at Petitioner's home.

The first incident occurred in the living room in November or December 2000. S.S. gave the following account:

> I was sleeping, and it was bout 9:00 when -- and [D.S.] and [Petitioner's daughter] were in the computer room -- or I was trying to sleep -- and [Petitioner] came in, and I was sleeping on the couch, and then he took off -- he started undoing my pants, and then he touched inside my crotch.

Petitioner testified that S.S. had fallen asleep on the living room floor, and he picked her up and placed her on the couch. He undressed her so she could sleep more comfortably. He said that while lifting S.S., "his thumb may have touched and pressed on her vagina." He insisted that any contact was "not intentional" but had been "accidental."

The second incident involving S.S. occurred in Petitioner's bedroom approximately one year before the living room incident. According to S.S., she was sitting on Petitioner's lap when Petitioner had his fingers inside her vagina. S.S. said that Petitioner's wife was also in the room but could not see what Petitioner was doing because S.S.'s "lap was under a table so no one would be able to see." Petitioner recalled the incident in a police interview. He insisted he did not place his fingers inside S.S.'s vagina. Instead, he recalled that there was an occasion where he had S.S. on his lap and "where he [was] bouncing her up and down on his knee." While bouncing S.S., his hand "may have accidentally touched her on her vagina." Petitioner insisted that the contact, if any, was not "intentional," but rather was "accidental."

## PROCEDURAL HISTORY

On March 30, 2001, a Washington County grand jury indicted Petitioner on ten counts of sexual offenses stemming from allegations of abuse by D.S. and S.S. Counts 1 through 6 related to the allegations from S.S., and counts 7 thorough 10 related to the allegations from D.S.

Petitioner waived his right to a jury trial and proceeded to trial before the court. At the close of the state's case, Petitioner's attorney moved for acquittal on all counts based on insufficient evidence. Finding D.S.'s testimony did not provide

a sufficient basis to support Counts 9 and 10, the trial judge granted the motion in part but denied it as to Counts 1 through 8. At the close of the trial, the trial court acquitted Petitioner on Counts 7 and 8 as to the other conduct involving D.S. and on Counts 3 and 6 pertaining to the allegations that Petitioner touched S.S.'s breasts.

The trial judge, however, convicted Petitioner on Counts 1, 2, 4, and 5, pertaining to the penetration conduct involving S.S. The judge explained his decision at some length:

> THE COURT:  Well, I spent probably at least eight hours this weekend in my chambers reviewing the evidence in this case.  I watched the C.A.R.E.S. tapes of both the alleged victims at least a couple of times, I went back -- and I have a taping system which is better than a note-taking system - and I replayed the testimony of witnesses in this particular case and compared things and thought about things.
>
> I think it's very important to point out, first of all, that there is a distinction between the two victims here, and counsel for the State, I think, has hit upon a point, and that is that [S.S.] is not [D.S.], and [D.S.] is not [S.S.], and I think that that's very important in terms of analyzing how this particular matter unfolds.
>
> Before I get into that, I want to rule on a couple of points here, and counsel for the State may anticipate my rulings, but the language in the indictment when it says it's part of the same act and transaction -- it's not surplusage.  It's there basically to identify for the defendant and put the defendant on notice what the defendant has to defend, and so the State must prove that there was touching of breasts at the same time there was the touching of the vagina.  Although that can happen anywhere within the two-year period of time, those two thing have to occur at the same time if they are basically made part of the same act and transaction.

There has been a failure of proof in this case as
it relates to those points.  So [Petitioner] is not
guilty of the two counts that relate to the touching of
[S.S.]'s breasts, because there is no evidence that that
ever occurred at any point in time when he is charged
with basically touching her vagina.

Similarly, as it relates to [D.S.], the State must
prove the elements of the offense, that the part
touched, being a sexual touch, was an intimate part of
the actor or the person that was acted upon.  In this
particular case, the Court cannot find beyond a
reasonable doubt that that element or -- has been met,
and that's based upon [D.S.]'s own testimony on the
C.A.R.E.S. tape as it relates to the touching of that
particular part of her body by the people, namely Tommy
-- whoever he may be -- that's at her school.  So
[Petitioner] is not guilty of that particular count.

Then we turn to [S.S.]  I've listened to the
C.A.R.E.S. tape.  I have looked at the C.A.R.E.S. tape.
I reviewed Detective Usery's statements.  There is one
particular thing that neither counsel talked about here
that just kind of jumps out -- you know.  At the time of
this alleged incident involving S.S. that allegedly
occurred on the couch, she was 11 years of age.  What is
[Petitioner] doing taking her pants off?  Think about
that for a second -- those of you that are here in the
audience.  What is [Petitioner] doing taking her pants
off?

Now, I have got a four-year-old granddaughter, you
know, and there are occasions when we get her ready for
bed.  Because she isn't able to take her pants off, we
take them off, and we put her in bed.  But I don't know
of anybody that's taking the pants off and undressing an
11-year-old child.  And why would someone be doing that?
Okay.

The testimony of [S.S.] -- you know, the thoughts
that have been put forward by defense counsel in terms
of why she might make this up -- I mean, they don't hold
any water.  You know, these aren't the same kind of
allegations that her sister basically had brought up.
She could have said, "He was touching my breasts, too."
You know, they are entirely different, almost to a
different character.

7 - OPINION AND ORDER -

She doesn't make the disclosure at some point in
time in terms of just saying to someone, "He did this,"
you know, in terms of telling her father.  It's
basically not until she is taken to the C.A.R.E.S.
interview that the question is really put to her, and
then the disclosure is basically halting.  It's
something that almost in a sense has to be dragged out
of her.  You know, she doesn't want anything bad to
happen to [Petitioner].  "What do you want to have
happen here."  "Well, I want him to be talked to.  I
don't want anything bad.  I don't want him to go to
jail."  "What do you want for yourself?"  "I want the
touching to stop."  It is credible.

When you place that in terms of the statement that
[Petitioner] has made to Detective Usery -- and I
believe that Detective Usery is human, like the rest of
us, in the sense that maybe every once in a while he
misses something.  If he has any sins in terms of his
police work in this particular case, they are sins of
omission, as opposed to sins of commission.  I believe
that he got it right in terms of what [Petitioner] said
to him, and if you take what [Petitioner] says and you
replace that with [S.S.]'s statement on the C.A.R.E.S.
tape and here in court, there is no doubt in my mind
that what she said happened.

Now, [Petitioner] gets a pass on the touching of
the breast because it didn't happen at the same time.
It wasn't plead in the way that the State might have
plead it, but he is guilty of sexual abuse in the first
degree for touching the vagina, and he is guilty of
sexual penetration with a foreign object, the insertion
of the fingers into the vagina.  So on those four counts
I find him guilty of those offenses.

The last count in this case is the one that has
caused the Court the most difficulty, and that's
basically the count of [D.S.] being touched on the
breasts in the kitchen.  You know, there is almost an
irresistible impulse to just basically say because I
believe, as I have indicated, that he committed these
other offenses, that he must have touched [D.S.] on the
breasts and done that with a sexual intent -- you know,
just the mere fact that he had done it to another child
he must have done it to her on that particular occasion,

8 - OPINION AND ORDER -

you know, but I'm not allowed -- I'm not allowed that
luxury.

I have to look at this in terms of weighing the
evidence, and really what it comes down to is this:
There are enough issues in terms of statements that
[D.S.] has made about how this particular event occurred
that she is not, in my mind, an accurate reporter, and
so I have a reasonable doubt.    I think it's highly
likely, I think it's highly probable that that occurred,
but I can't say beyond a reasonable doubt, and,
notwithstanding the fact that I found him guilty on the
other four counts involving the other child, I cannot
say beyond a reasonable doubt that she was touched on
the breasts and sexually abused on that occasion, and so
I find not guilty of that offense.    That is the Court's
judgment.

                              * * *

I find [Petitioner] guilty of Count 1.    I find him
guilty of Count 2.    I find him not guilty of Count 3.
I find him guilty of Count 4.    I find him guilty of
Count 5.    I find him not guilty of Count 6.    I find him
not guilty of County 7, and I find him not guilty of
Count 8.    Counts 9 and 10 have been previously dismissed
by the Court.

The trial judge sentenced Petitioner to 100 months of imprisonment

and a post-prison supervision term.

Petitioner directly appealed.    He argued the trial court

applied the wrong standard to his motion for acquittal and, even

under the standard applied, should have granted the motion because

the victim's credibility was suspect.    The Oregon Court of Appeals

affirmed without opinion and the Oregon Supreme Court denied

review.    *State v. Walters*, 188 Or. App. 766, 73 P.3d 313, *rev.

denied*, 336 Or. 92, 79 P.3d 314 (2003).

Petitioner then sought state post-conviction relief ("PCR"). He alleged numerous grounds of ineffective assistance of counsel. Following an evidentiary hearing, the PCR trial judge denied relief. Petitioner appealed, but the Oregon Court of Appeals affirmed without opinion and the Oregon Supreme Court denied relief. *Walters v. Hill*, 210 Or. App. 533, 152 P.3d 287, *rev. denied*, 342 Or. 504, 155 P.3d 875 (2007).

On May 23, 2007, Petitioner file his habeas corpus action in this Court. Petitioner alleges two grounds for relief:

> **Ground One:** ineffective assistance of trial counsel
> **Supporting Facts:** stipulated to admissions of CARES report, did not object to prior bad acts testimony, failed to argue constitutional standards for judgment of acquittal
>
> **Ground Two:** insufficient record made to stain [sic] a prima facie finding satisfying the state and federal constitutional requirements for due process
> **Supporting Facts:** conflicted factual mess, no clear, credible evidence on any count

Because Petitioner addressed only the claim alleged in Ground Two in his Memorandum in Support of Petition for Writ of Habeas Corpus, Respondent argues relief should be denied on the claim alleged in Ground One. In any event, Respondent also asserts the state court decisions denying relief on both grounds are entitled to deference.[1]

---

[1]Respondent initially argued Petitioner procedurally defaulted the claim alleged in Ground Two. Upon review of the record, however, it is apparent Petitioner fairly presented and fully exhausted his federal insufficient evidence claim in the state

## LEGAL STANDARDS

Under 28 U.S.C. § 2254(d)(1), as amended by the Antiterrorism and Effective Death Penalty Act of 1996, habeas corpus relief may not be granted on any claim that was adjudicated on the merits in state court, unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is not considered "contrary to" established Supreme Court precedent unless it "applies a rule that contradicts the governing law set forth in [Supreme Court cases]" or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003). A federal habeas court cannot overturn a state decision "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams v. Taylor*, 529 U.S. 362, 409 (2000).

---

courts. Accordingly, the Court looks only to the merits of this claim.

"'Clearly established Federal law' is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lambert*, 393 F.3d 943, 974 (9th Cir. 2004). The last reasoned decision by the state court is the basis for review by the federal court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Franklin v. Johnson*, 290 F.3d 1223, 1233 n. 3 (9th Cir. 2002).

<u>DISCUSSION</u>

**I.   Ground One - Ineffective Assistance**

As noted, Petitioner does not address his ineffective assistance of counsel claim in his brief in support of the petition.   Although the Court concludes Petitioner has not explicitly waived this claim, the Court also finds Petitioner has not demonstrated the PCR court's rejection of his ineffective assistance claim is contrary to or an unreasonable application of *Strickland v. Washington*, 466 U.S. 668, 687-88 (1987).   *See* 28 U.S.C. § 2254(d); *see also Lambert*, 393 F.3d at 970 n.16 (petitioner bears burden of proving his case); *Richter v. Hickman*, 578 F.3d 944, 951 (9th Cir.2009), *cert. granted*, 130 S. Ct. 1506 (February 22, 2010) (habeas court conducts independent review of the record when no state court has explained its reasoning on a

particular claim).[2]    The Court bases this finding upon an independent review of the record, including the trial transcript, trial counsel's affidavit, Petitioner's deposition in the PCR proceeding, and the PCR hearing transcript.    Accordingly, the Court denies habeas corpus relief on the claim alleged in Ground One.

## II.  Ground Two - Insufficient Evidence

In Ground Two, Petitioner alleges his convictions were constitutionally deficient due to an insufficiency of evidence. A federal habeas court may review a claim that the evidence adduced at a state trial was not sufficient to convict a criminal defendant beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 321 (1979).  When reviewing a habeas corpus claim based on insufficient evidence, the relevant question is not whether the reviewing court would have found the defendant guilty beyond a reasonable doubt, but whether "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime

---

[2]The judges of this District have repeatedly rejected respondent's assertion that a petitioner waives his claims by not addressing them in his supporting memorandum.  *See Elkins v. Belleque*, 2008 WL 5046386 *2 (D.Or. 2008); *Buffa v. Belleque*, 2009 WL 3698106 *3 (D.Or. 2009); *Reigard v. Hall*, 2009 WL 3518029 *4 (D.Or. 2009); *Walton v. Hill*, 2009 WL 2829260 *22-23 (D.Or. 2009); *Solano v. Belleque*, 2009 WL 2246213 *3 (D.Or. 2009); *Spillino v. Belleque*, 2009 WL 585929 *3 (D.Or. 2009).    For the reasons articulated in those decisions, this Court rejects the same assertion here.

beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).

When the record supports conflicting inferences, courts must presume the finder of fact resolved the conflicts in favor of the prosecution. *Id.* at 326. "Except in the most exceptional of circumstances," *Jackson* does not permit federal habeas courts to revisit credibility determinations. *Bruce v. Terhune*, 376 F.3d 950, 957-58 (9th Cir. 2004).

The *Jackson* standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n.16; *Juan H. v. Allen*, 408 F.3d 1262, 1275 (9th Cir. 2005), *cert. denied*, 546 U.S. 1137 (2006). In the habeas corpus context, "[a]n additional layer of deference is added to this standard by 28 U.S.C. 2254(d), which obliges [a petitioner] to demonstrate that the state court's adjudication entailed an unreasonable application of the quoted *Jackson* standard." *Briceno v. Scribner*, 555 F.3d 1069, 1078 (9th Cir. 2009).

Petitioner was convicted of two counts of Unlawful Sexual Penetration in the First Degree and two counts of Sexual Abuse in the First Degree. All four charges arose from contacts Petitioner had with S.S.

Under Oregon law, the offense of Unlawful Sexual Penetration in the First Degree requires proof that the defendant penetrated the vagina, anus, or penis of another with any object other than the penis or mouth of the actor and:

(a) The victim is subjected to forcible compulsion;

(b) The victim is under 12 years of age; or

(c) The victim is incapable of consent by reason of mental defect, mental incapacitation or physical helplessness.

Or. Rev. Stat. § 163.411(1). Sexual Abuse in the First Degree requires proof that the defendant:

(a) Subjects another person to sexual contact and:

(A) The victim is less than 14 years of age;

(B) The victim is subjected to forcible compulsion by the actor; or

(C) The victim is incapable of consent by reason of being mentally defective, mentally incapacitated or physically helpless; or

(b) Intentionally causes a person under 18 years of age to touch or contact the mouth, anus or sex organs of an animal for the purpose of arousing or gratifying the sexual desire of a person.

Or. Rev. Stat. § 166.427(1).

Viewing all of the evidence in the light most favorable to the prosecution, the Court concludes a rational trier of fact could have found beyond a reasonable doubt all of the essential elements of Unlawful Sexual Penetration and Sexual Abuse.

During the interview with Marita Keys, an employee of CARES, the victim acknowledged Petitioner had been touching her. She said she did not come forward sooner because she was afraid of damaging the relationship between the two families.

Shortly after the CARES interview, Detective Charles Usery questioned Petitioner. Petitioner admitted he had touched the victim on the vagina when he undressed her while she was lying on the couch. Detective Usery asked about other incidents when Petitioner might have touched her, and Petitioner described an incident "approximately a year and a half earlier . . . where he had been bouncing her up and down on his knee and that his hand and fingers may have accidentally touched her vagina."

At trial, the victim testified about the incidents that formed the basis of the charges. On direct examination, she gave a clear account of Petitioner removing her clothes and digitally penetrating her while she was attempting to sleep on a couch. She also testified to a separate incident in the living room, when Petitioner digitally penetrated her while she was sitting on his lap.

As noted, the trial judge made specific findings on the credibility issues in this case. The judge addressed and rejected Petitioner's theory that the victim's sister might have pressured her into making the allegations. The judge concluded that theory did not "hold any water" because the victim's allegations were not

"the same kind of allegations that her sister had brought up."  He found the victim's statements during the CARES interview and at trial that Petitioner inappropriate touched her were credible.

In short, the trial judge was in the best position to weigh and to evaluate the credibility of all of the witnesses, including S.S. and Petitioner.  There is nothing in the record to suggest it would be irrational to believe S.S.'s assertions.  As is stated in Oregon Uniform Criminal Jury Instruction No. 1005, "the testimony of any witness whom [the trier of fact believes] is sufficient to prove any fact in dispute."  Thus, Petitioner has failed to demonstrate that the state courts' rejection of Petitioner's insufficient evidence claim was contrary to or an unreasonable application of clearly established federal law.  Accordingly, habeas corpus relief must be denied.

### CONCLUSION

For these reasons, the Court DENIES the Petition for Writ of Habeas Corpus and DISMISSES this action.

IT IS SO ORDERED.

DATED this 17th day of June, 2010.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge

17 - OPINION AND ORDER -                    P:\Brown-LawClerks\07-769walters0617opin.wpd